IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RANDY ASBURY, on behalf of )
himself and others similarly situated, )
)
Plaintiff, )
)
v. ) 1:21-CV-650
)
CREDIT CORP SOLUTIONS, INC., )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff, Randy Asbury, filed suit in state court alleging that the defendant, Credit Corp Solutions, Inc., communicated information about his alleged debt to a third party. Credit Corp removed the case to this court, asserting federal question jurisdiction based on Mr. Asbury's federal Fair Debt Collection Practices Act claim. When the Court questioned whether the plaintiff had standing to pursue that claim in federal court, and despite its burden to show subject matter jurisdiction, Credit Corp declined to identify the concrete injury-in-fact allegations necessary to establish jurisdiction. When a litigant invokes the jurisdiction of the court and then fails to identify the alleged facts necessary to show that jurisdiction exists, remand is appropriate.

### I. Procedural History

In July 2021, Mr. Asbury brought this putative class action in North Carolina state court, alleging Credit Corp violated the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 *et seq.*, the North Carolina Unfair and Deceptive Trade Practices Act, N.C.

Gen. Stat. § 75.1-1, and the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Doc. 3. The putative class consists of consumers in North Carolina whose debt information Credit Corp sent to a third party without their consent. Doc. 3 at ¶ 28; Doc. 16 at ¶ 27.

Credit Corp removed the action to this court based on federal question jurisdiction arising out of the FDCPA claim. Doc. 1 ¶ 4. The Court *sua sponte* questioned standing in light of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and ordered the parties to show cause why the case should not be remanded to state court for lack of subject matter jurisdiction. Doc. 25.

## II. Facts

The Court has the original and amended complaints before it.[1] Doc. 3; Doc. 16. The Court offered the parties an opportunity to present evidence in support of subject matter jurisdiction, Doc. 25 at 2; neither party responded to that invitation. The Court will apply the usual test for analyzing standing at the pleadings stage and will accept as true the factual allegations in the complaints.[2] *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (accepting as true factual allegations in complaint when analyzing standing at the pleadings stage).

---

[1] Mr. Asbury amended the complaint, Doc. 16, after the case was removed. Doc. 1. Credit Corp, the removing party, bears the burden of demonstrating subject matter jurisdiction when the case is removed and thereafter. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296–97 (4th Cir. 2008). The Court will consider allegations in both the original and amended complaints.

[2] The factual allegations in Mr. Asbury's original complaint, Doc. 3, and amended complaint, Doc. 16, as relevant to Mr. Asbury's FDCPA claim are almost identical. Any differences are minor and do not influence the standing analysis.

2

According to the complaints, Mr. Asbury owes money to an unidentified creditor, and that debt was in default. Docs. 3, 16 at ¶¶ 13, 18. The creditor "transferred" the debt to Credit Corp, a debt collector. Docs. 3, 16 at ¶¶ 9, 11, 17.

As part of attempting to collect that debt, Credit Corp used a third-party vendor to prepare and send letters to Mr. Asbury from Credit Corp about his debt. Docs. 3, 16 at ¶¶ 19–20. Credit Corp sent information about Mr. Asbury's debt to the third-party vendor, Docs. 3, 16 at ¶ 21, who "populated" some or all the debt information into a "prepared template," printed the resulting letter, and mailed it to Mr. Asbury. Docs. 3, 16 at ¶ 24.

The vendor prepared and sent two such letters from Credit Corp to Mr. Asbury, who received and read the letters. Docs. 3, 16 at ¶ 25. Mr. Asbury did not consent to Credit Corp sharing his debt information with the third-party vendor. Doc. 3 at ¶¶ 47–49; Doc. 16 at ¶¶ 46–48.

### III. Fair Debt Collection Practices Act

Section 1692c(b) of the FDCPA, titled "Communication with third parties," prohibits debt collectors from communicating with "any person other than the consumer" in connection with an alleged debt held by the consumer, with only limited exceptions. *See Bryan v. Allied Interstate LLC*, 513 F. Supp. 3d 686, 691 (W.D.N.C. 2021). As is relevant here, the statute provides that:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting

3

> agency if otherwise permitted by law, the creditor, the attorney
> of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). The § 1692b exceptions to this "no communication" rule address the way a debt collector may communicate "with any person other than the consumer for the purpose of acquiring location information." *Id.*

The FDCPA thus broadly prohibits a debt collector from communicating with anyone other than the consumer "in connection with the collection of any debt," subject to several carefully crafted exceptions—some enumerated in § 1692c(b), and others in § 1692b. Mr. Asbury alleges that the third-party vendor does not fall within any of the exceptions and that Credit Corp violated the FDCPA when it "communicated" with the third-party vendor "in connection with the collection of a debt" by giving the vendor information about Mr. Asbury's debt.[3]

## IV. Standing and *TransUnion*

The United States Constitution limits federal courts to deciding "cases" or "controversies." U.S. Const. art. III § 2; *see also TransUnion*, 141 S. Ct. at 2203. "Standing to sue is a doctrine rooted in the traditional understanding of a case or

---

[3] This case is one of many where a debtor/letter recipient is pursuing FDCPA liability based on disclosure to the debt collector's mailing vendor. *See Hunstein v. Preferred Collection & Mgmt. Servs*, 17 F.4th 1016 (11th Cir. 2021), *reh'g en banc granted, opinion vacated*, 17 F.4th.1103 (11th Cir. 2021); *Stewart v. Healthcare Revenue Recovery Grp.*, No. 20-CV-00679, 2022 WL 200371 (M.D. Tenn. Jan 21, 2022); *Nyanjom v. NPAS Sols., LLC*, No. 21-CV-1171, 2022 WL 168222 (D. Kan. Jan. 19, 2022); *Sputz v. Alltran Fin., LP*, No. 21-CV-4663, 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021); *Liu v. MRS BPO, LLC*, No. 21-C-2919, 2021 WL 5630764 (N.D. Ill. Nov. 30, 2021); *Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-CV-2428, 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021); *Shields v. Prof'l Bureau of Collections of Md., Inc.*, No. 20-CV-02205, 2021 WL 4806383 (D. Kan. Oct. 14, 2021); *Thomas v. Unifin, Inc.*, No. 21-CV-3037, 2021 WL 3709184 (N.D. Ill. Aug. 20, 2021); *In re FDCPA Mailing Vendor Cases*, No. 21-CV-2312, 2021 WL 3160794 (E.D.N.Y. July 23, 2021).

controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion*, 141 S. Ct. at 2203 (cleaned up).

To satisfy the standing requirement, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. The burden of establishing standing here is on the defendant, Credit Corp, because it is Credit Corp that has invoked the jurisdiction of this court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Bryant v. Woodall*, 1 F.4th 280, 285 (4th Cir. 2021). Credit Corp must show that the complaint includes "clearly allege[d] facts demonstrating each element" of standing. *Spokeo*, 578 U.S. at 338 (cleaned up).

To establish injury in fact, the allegations must be sufficient to show a plaintiff has suffered a concrete harm. *Id.* at 339–40. Tangible harms, such as physical harm and monetary harm, "readily qualify as concrete injuries under Article III." *TransUnion*, 141 S. Ct. at 2204. Although less readily identifiable, intangible harms, too, can be concrete. *See Spokeo*, 578 U.S. at 340. Intangible harms are concrete when the asserted harm has a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 141 S. Ct. at 2204.

While Congress's views on harm may be "instructive," a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. "Only those plaintiffs who have been concretely harmed by a

5

defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 141 S. Ct. at 2205. In other words, "an injury in law is not an injury in fact." *Id*.

The Supreme Court recently applied these standards in *TransUnion*. In that case, a class of consumers sued TransUnion, a credit reporting agency, alleging violations of the Fair Credit Reporting Act. *Id*. at 2200. Specifically, the class members claimed that TransUnion did not adopt reasonable procedures to ensure the accuracy of their internally-maintained credit files when it used a product that wrongfully designated the class members as potential terrorists, drug traffickers, or other serious criminals. *Id*. at 2200–01.

For some of the class members, TransUnion provided internal credit reports with this misleading information to third-party businesses, but for others, it did not share the misleading internal credit files with any third party. *Id*. at 2200. In analyzing whether the class members suffered an intangible concrete harm arising from TransUnion's FCRA violation, the Court separately examined whether the two categories of class members had standing.

The Supreme Court compared the harm suffered by class members whose misleading credit reports TransUnion had shared with third-party businesses to the kind of harm in a defamation action and determined that the class members' harm had a "close relationship" to the reputational harm associated with defamation. *Id*. at 2208–09. "Under longstanding American law, a person is injured when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party," *id*. at

6

2208, and the *TransUnion* plaintiffs who were falsely labeled as potential terrorists, drug traffickers, or serious criminals in reports disseminated to third parties faced a closely-related concrete harm. *Id.* at 2209.

The result was different for those class members whose credit files TransUnion did not share with a third party. Although the internal credit files contained misleading information, there was no historical or common law analogue "where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury." *Id.* Likewise, the risk of harm if the information was disseminated did not create a concrete harm, as there was no historical analogue, and the risk of harm was speculative in nature. *Id.* at 2211–12.

## V.     Analysis

The Court assumes without deciding that it was a violation of the Fair Debt Collection Practices Act for Credit Corp to share Mr. Asbury's debt information with its vendor. But a statutory violation alone is not sufficient to confer standing. As the Supreme Court has made clear, a statutory violation does not necessarily cause concrete harm. *See Spokeo*, 578 U.S. at 341; *TransUnion*, 141 S. Ct. at 2205.

Nor is it enough that both parties agree that Mr. Asbury has standing. *See* Doc. 22 at 9; Doc. 23 at 9. The parties cannot avoid the requirements of standing through consent, *see Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) (stating that parties cannot consent to subject matter jurisdiction that does not otherwise exist), and it is a requirement that cannot be waived or forfeited. *See, e.g.*, *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012). The Court "has an

7

independent obligation to assure that standing exists," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009), and it is not required to manufacture standing arguments the parties do not present. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[A]s a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them and are responsible for advancing the facts and argument entitling them to relief.") (cleaned up).

As the Supreme Court noted in *TransUnion*, American courts have traditionally recognized disclosure of private information and intrusion upon seclusion as intangible harms that are an appropriate basis for a lawsuit. 141 S. Ct. at 2204.[4] On suitable facts, violations of the FDCPA could cause intangible harm closely related to the harm caused by these invasion of privacy torts. *See Foley v. Mary Washington Healthcare Servs., Inc.*, No. 21-CV-239, 2021 WL 3193177, at *3 (E.D. Va. July 28, 2021).

But the question is not a generic one. *See Smith v. GC Servs. Lim. P'ship*, 986 F.3d 708, 711 (7th Cir. 2021) ("Standing often depends on what theory a plaintiff advances and how injury would be proved."). The question is whether the complaint includes allegations that Mr. Asbury suffered harms with a "close relationship" to the harms caused by those or other traditional torts. *TransUnion*, 141 S. Ct. at 2208–10

---

[4] Both torts are part of a general category of "invasion of privacy" tort that future-Justice Louis Brandeis and Samuel D. Warren identified in 1890. *See* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193 (1890). In 1960, William Prosser split the general "invasion of privacy" tort into four separate causes of action recognized by many courts today: appropriation of one's name or likeness, intrusion upon the seclusion of another, public disclosure of private facts, and placing another in a false light before the court. *See* William L. Prosser, *Privacy*, 48 CALIF. L. REV. 383 (1960).

8

(distinguishing between class members with the same cause of action when analyzing standing because of different evidence of harm).

The original and amended complaint are almost silent on the kind of harm Mr. Asbury says he has suffered from Credit Corp's illegal sharing of his debt information with the third-party vendor. He alleges with no detail that "[t]he unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable," Doc. 3 at ¶ 55; Doc. 16 at ¶ 54, and makes a passing reference to "the harm to [the] plaintiff" caused by the "unauthorized disclosure of private and sensitive information." Doc. 3 at ¶ 53; Doc. 16 at ¶ 52.

Credit Corp has the burden to show Mr. Asbury has standing, but it has not pointed to any allegations of concrete harm, tangible or intangible, to Mr. Asbury. *See* Doc. 29. Indeed, Credit Corp relies exclusively on the fact that Mr. Asbury has alleged a violation of federal law, *id.* at 8–10, and on Mr. Asbury's general assertion that this court has subject matter jurisdiction. *See id.* at 6–7. It makes no argument that the allegations are sufficient to confer standing and contends that Mr. Asbury "did not suffer any injury" from Credit Corp's statutory violations. *Id.* at 5. Credit Corp does little more than suggest "[h]ypothetical jurisdiction [that] produces nothing more than a hypothetical judgment." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). This "comes to the same thing as an advisory opinion," which the Supreme Court has "disapproved . . . from the beginning." *Id.*

In his briefing, Mr. Asbury agrees there is subject matter jurisdiction and asserts he has suffered intangible concrete harm similar to that caused by the torts of intrusion

9

upon seclusion and disclosure of private information. *See* Doc. 26 (discussing only intangible harm). But he has not explained how his conclusory allegations support his contentions. The facts alleged do not show the kind of harm that gives rise to intrusion upon seclusion liability, such as "physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another." *Tillet v. Onslow Mem'l Hosp., Inc.*, 215 N.C. App. 382, 384, 715 S.E.2d 538, 540 (2011) (listing examples of conduct supporting intrusion upon seclusion action); *see also* Restatement (Second) of Torts § 652B cmt. b. Nor has he alleged the kind of public disclosure or reputational harm caused by tortious disclosure of private information.[5] *See In re FDCPA Mailing Vendor Cases*, No. 21-CV-2312, 2021 WL 3160794, at *6 (E.D.N.Y. July 23, 2021) (noting that "[i]t would be difficult to suggest" that a communication about "a relatively *de minimis* debt to a mailing vendor" is "highly offensive to a reasonable person").

Mr. Asbury also contends that his allegations of harm are sufficient at this stage and that he is entitled "to the benefit of discovery" before being required to factually establish his injuries. Doc. 26 at 8. Yet he has not explained what kind of discovery would shed light on his harm or why he does not know how he was harmed.

---

[5] Even applying the broadest definition of public disclosure adopted by some courts, *see, e.g.*, *McSurely v. McClellan*, 753 F.2d 88, 112–13 (D.C. Cir. 1985) (applying Kentucky law and holding disclosure of premarital relationships to spouse gave rise to disclosure of private information action), Mr. Asbury has not alleged a harm closely related to the harm occurring from tortious disclosure of information.

10

Allowing Credit Corp to remove a case based on subject matter jurisdiction that it is unwilling to defend at the outset increases the likelihood that the Court will issue a hypothetical decision of no consequence. It also precludes the Court from addressing objections to subject matter jurisdiction that Credit Corp can later raise on appeal, should it lose a dispositive motion. *See Wilson*, 699 F.3d at 793 (noting subject matter jurisdiction cannot be waived). If Credit Corp wants this court to exercise jurisdiction over the merits, which it says it does, *see, e.g.*, Doc. 29 at 9, then it must demonstrate that the Court has jurisdiction—jurisdiction to rule against it as well as in favor of it.

*Spokeo* requires the complaint to include "clearly alleged facts demonstrating each element" of standing. 578 U.S. at 338 (cleaned up). In the absence of specific allegations of injury in fact from the alleged disclosure at issue, the Court does not have subject matter jurisdiction and remand is appropriate.

It is **ORDERED** that:

1. The case is remanded to the Superior Court of Davidson County.
2. No decision is made on the motion to dismiss, Doc. 17, which can be heard in state court.

This the 8th day of February, 2022.

_____
UNITED STATES DISTRICT JUDGE